This is the time for argument in Pyramid Lake Pied Tribe of Indians in the United States v. Truckee Carson Irrigation District, et al., and I understand you're all back again, so the appellant may proceed. May it please the Court, I'm Katherine Barton for the United States, and seated with me at counsel table is Mr. Robert Pelsiger for the Tribe. Our plan for proceeding is that I will take ten minutes on opening and Mr. Pelsiger will take seven and we'll save three for rebuttal. I'll focus my argument on the issue of transportation loss, the main issue that, the transportation loss of water, the main issue that we briefed, and that issue involves 5,600 acre feet of water adjudicated to the tribe in the Ordish Decree. There's no question that if the tribe used that water for agriculture, the water would flow down the Truckee past Derby Dam, not be available to the TCID water users, and would be used by the tribe. And not only that, but the water would then return to the river and flow on to Pyramid Lake to the additional benefit of the tribe and the fish. But here the FLEs maintain that just because the tribe seeks to change the purpose of use of the water from agriculture to in-stream flows, that that 5,600 acre feet should no longer be available to the tribe, and instead should be available to them for their benefit in the Newlands Project, even though they have no legal right to that water. So, but the real issue on this question is whether or not the tribe has the right to the amount of water that would be available at the end after it's been used for irrigation when it gets there, or whether it's entitled to the entire amount. And as I read the decree, it tends to read against you. Is there something else in the decree beside that long paragraph that seems to nudge it in the other way? There's not another provision in the decree except, well, the change provision, which clearly is the provision that governs what happens when a water right, including an irrigation water right, is put to a new use. The decree follows the general principles of common law of appropriative water rights, where it decrees a diversion right, which includes the transportation loss amount. And if you want to change that right, then it's subject to the no-injury rule. And that's the general rule. Now, the district court read the decree, this irrigation adjustment provision, to somehow require, provide that you only, if you change the use of water, you only get the amount of water you need for the new use. I mean, there's no principle like that in the common law, and you would think that if the court was, if the decree was going to deviate in that manner, it would have said so. The irrigation provision applies only to irrigation. It's very explicit. It talks about applying water to the land. If they wanted that to be a general provision, they could, they didn't have to use the term irrigation. There are other water rights in the decree. There's power and milling rights and storage rights. Where do we, now, this is going to show my ignorance, but I'm used to that. Where do we get the number of acre feet to which the tribe is entitled in terms of water duty, water duty in the sense of actually used for irrigation? Where does that number come from? In Claims 1 and 2, there are water duties specified. I can pull it out. Yeah, would you please? And some of this, actually, when you parse it all out, may be a little bit tricky, but the. A little bit. Yeah. Well, the total amount diverted in Claim 1. I've got, if you can just, we can read together, so if you can tell me where you are. What page are you on? I am on page 13 of the joint, of the excerpts of record. Okay. And, you know, I'm not sure I can do this for Claim 2. I shall not exceed any acre feet diverted from the river. I might need, wait, here we go. I can see it in Claim 2 right off the bat. If you go to the second column down, if you start four lines from the bottom of the first paragraph in Claim 2, it says the amount of water for bench lands shall not exceed during any calendar year 5.59 acre feet per acre diverted from the river. And then it says not exceed during any calendar year 4.1 acre feet per acre applied to the lands. So those are the two different numbers there, one for diversion. I see, okay. And I don't know if it's so clearly laid out in, oh, yes, I see. In Claim 1, it's not a new, the number is written out. It's four acre feet, and it's at the top of that same column. It's 4. Say that again. You lost me at that last sentence. For Claim 1, if you start at the bottom, two lines up on the left-hand column for Claim 1, it says the diversion shall not exceed 4.71 acre feet per acre. And then if you continue reading, it says, and then further provided that the amount of water applied to the land shall not exceed four acre feet per acre. So is that difference? That's the transportation loss water, yes, effectively. I think there may have been some adjustments made at some point for some inconsistencies in the numbers. But basically, yes. Now, that. But, of course, both of these suffer from the sense, in a sense, the same problem from the provision that you're trying to escape from. Both of these are assuming that the water is being used for irrigation. Now, I'm not arguing from that that the water can only be used for irrigation, but the numbers here in terms of how much water you get is based upon an assumed agricultural use. Isn't that right? That was how they were initially determined, yes. And that is normally you would get an appropriated water right. Of course, the tribe's water right is a federally reserved right. But if you're thinking about it in terms of the decree, the way the decree works and normally in appropriated water rights is whatever you initially got the water for, that's how your water right is determined, the amount is determined. And then from that point on, it can be changed subject to the no issue. I'm not on the point as to whether or not it can be changed. I'm still trying to figure out what the number is right now. Right, right. Okay. So another point I wanted to make about the language in the decree and not in the decree is that, first, if they wanted to use that irrigation adjustment provision, it just recognizes that there are estimates in the decree that the water runs through a bunch of ditches and they had to allocate the water among users. And the ditch operations could change through time. It allows for the water to deliver to the land for irrigation to go up and down. But it only provides that's a special provision for irrigation, for the management of irrigation rights. And if they wanted that to be a more general provision, they didn't have to limit it to irrigation. It could have and should have read more generally. And also, if there was going to be a provision that explained what would happen, that something special would happen if you moved that water right to a new use, that provision, well, it's certainly not there. It doesn't say anything about what happens to a non-irrigation right. And you think you would find it in the change provision, but there's nothing like that in the change provision either. The change provision simply applies the no injury rule, which is the basic common law rule of how water rights are transferred. I'm a little surprised. I mean, this is such an obvious question now that it's in front of us that we don't have, you know, 10 cases already telling us the answer. Why is this a new question? Well, I think it's a new question because usually, and I think this is part of what is going on for everybody involved in this case, you cannot transfer a return flow on a stream because it would you cannot increase the consumptive use. You cannot change your use to take that return flow out of the river because the people downstream are counting on that return flow. But the tribe is at the bottom of the stream. The tribe is the last water user. So it is a special circumstance. We're not asking for any special rule, but we are asking for the rules, the standard rules to be applied to the special circumstance of the tribe where its return flow just goes to its lake. Nobody is harmed. Has the tribe never before sought to transfer a use for agriculture to in-stream flow for fishery? No, this is the first time. So that may be the reason why this question has never shown up. Exactly. It's presented fairly uniquely in this case. And I do think that's why. Are there any other users on the river who might seek to change from agricultural use to in-stream flow? I can't think of any, but there may be one that I'm not aware of. I don't know if there are. I'm not aware of if there are governmental entities. Maybe Mr. Pelsiger would know that. But even that could be a little more complicated for someone farther upstream because the in-stream flow would require water to stay in the stream and could affect the downstream users and so on and so forth. So it's a very, I mean, ultimately a determination to change a water right can be a very factual determination and depends on the individual circumstances. But here what we have is a unique circumstance of the water user at the bottom of the system. What if the tribe says, listen, we're entitled to take this out and use it for agriculture and we'll get all of this water, we'll get our end use, the water duty at the end, plus we'll get our transportation loss, and we're entitled to do this. What's to prevent the tribe from saying to the other users, for example, a water district in this case, well, what's it worth to you if we sell a little bit of that matter in dispute? Why haven't we had some sort of a deal worked out? That they would sell it? That is to say, the competing positions are who gets the transportation loss? Does that come to the tribe? They get to keep it no matter what, whether they're actually transporting it to the fields or not. Or if they don't use it for transportation, it simply goes back into the river and any other user has a claim on it. The tribe has, it seems to me, a great big hammer. They can say, listen, we're going to use this for agriculture and we're going to use not only the end use, the water duty, but we're also going to use the amount used for transportation unless you make us an offer. Well, I don't know what will happen if we lose this case. But, no, I think the tribe wants the water for the fish. Everybody knows the tribe wants the water for the fish. It needs it for the fish. Last year, actually, when we first operated our first temporary transfer permit, the one that was approved, we used all the water that was given to us by the state engineer and we needed this water for the fish. So that's, and I will now, if you, I'll let Mr. Pelsiger come up and finish. Thank you. May it please the Court. Robert Pelsiger for the Pyramid Lake Paiute Indian Tribe. I'll try to pick up the dialogue where it left off. May I go back to Claims 1 and 2 on page 13 of the government's excerpts of record and just point out in terms of trying to figure out the numbers, Judge Fletcher, that the other number that's important for both Claims 1 and 2 is under Claim 1, it's for the irrigation of 3,130 acres, which is the first line of the second paragraph under Claim 1. And under Claim 2, it's, and then they are somewhat different, but it says in addition to the above-mentioned 3,130 acres, there's an additional amount of 2,745 acres. So that's the total acreage. And then what you have, the second set of figures, which Ms. Barton referred to, are the amount per acre, both in terms of the amount that you can divert and the amount that is applied to the land. And so to get the total amounts, if you add these figures up, you add Claims, Claim 1, you multiply the 3,130 acres times the water duty. It's about 50. And that number is actually there. It's 14,742 acre-feet, which is kind of in the middle of the first, of the second paragraph under Claim 1. They didn't do the multiplication in Claim 2, but it's about the same amount. So it's about 30,000 acre-feet. How much is that in relation to something else? I mean, how much proportionally are we talking about? Well, I don't know. An acre-foot is 325,000 gallons, which covers. Oh, I know. But in terms of, say, how much is? Pyramid Lake needs 400,000 acre-feet of water to maintain its current elevation because to offset evaporation. So it's a pretty small amount of water, which helps to answer, I think, Judge Fletcher's question about why don't we sell the water. First of all, the tribe is not in the business of selling water. The tribe is trying actively to acquire water rights. To answer another question, there are other water users. In fact, the tribe has an agreement with water users in Reno and Sparks and Washoe County Municipal Water Users, who are also interested in maintaining the water quality of the Truckee River for their own reasons and the best way to maintain water quality and to meet both state and tribal water quality standards is to increase the flows, particularly during low-flow conditions like we had last year. Now, this year, for example, we wouldn't need the water. Our permit expired. It was a temporary permit. We don't have one. But even if we had one this year, we wouldn't have utilized the temporary transfer because there was sufficient flow in the river to provide enough to meet Claims 1 and 2 without calling on – it's already there – without calling on somebody else to reduce their diversions without making a call on water that's subject to somebody else's water rights. So right now, as we speak, there's probably more than 500 cubic feet per second flowing in the Truckee River below Derby Dam into Pyramid Lake. And the combined amount that we're seeking under Claims 1 and 2 is about 100 cubic feet per second. So the water's already in the river. When the water's already in the river, there's no need to implement this change. The other provision I'd like to point out to you is the change provision itself, which is on page 91 of the excerpts of record. And this, I think, is the key provision. This is what Ms. Martin referred to as the change provision. It's 1, 2, 3, 4th paragraph, obviously in a left-hand column. And it provides that persons whose rights are adjudicated hereby shall be entitled as a matter of right to change in the manner provided by law the point of diversion, the place, means, manner, or purpose of use of waters to which they are entitled or any part thereof. And this is the key. So far as they may do so without injury to the rights of other persons whose rights are fixed by this decree. So that's the no-injury rule, and that's the requirement of the decree, and that is a requirement of standard appropriative water law, that people whose water rights are adjudicated for one purpose, say agriculture, can change it to another purpose, whether it's in-stream flows or municipal and industrial uses or whatever. And that's going on throughout the West. The growth of the West is to a very large extent fueled from a water standpoint by agricultural water rights being sold to municipal purveyors. Here we're doing the same thing, only it's going to in-stream flows and environmental use instead of municipal use. What was the purpose of the transportation loss provision? The purpose of the transportation loss, and this is, again, very common for agriculture, is that the water right is quantified in two ways. One is the amount of water that you divert from the stream, how much you're entitled to divert from the stream, and the other is how much you're entitled to apply to your land. So there are two different measuring points. That's what's referred to in both Claims 1 and 2. You have to have this strong. My understanding is that its purpose is to ensure that, as per irrigation, the tribe has enough water, taking into consideration the loss that naturally occurs in transferring from the river to irrigated land. That's absolutely correct. And that's correct. It's not just the tribe. It's every agricultural water whose rights are adjudicated in this decree. There are transportation losses. Is it the tribe's argument in this case that it is entitled to transportation loss even if there is none? Even if there isn't. The tribe's position in this case. Even if there is no actual transportation loss. The tribe's position in this case is that in accordance with this decree. But you can start with a yes or no. Yes. Yes. That's your position. Yes. Okay. And then I'd like to elaborate, if I can. The tribe's position is that in accordance with that change provision that I just read, that the tribe is entitled, the change provision states that the people's, persons whose rights are adjudicated are entitled to change the rights that are decreed insofar as they can do so without injury to the rights of third parties. And the tribe's position here is very unique. When you have, for example, on the Truckee River, the water passes through Reno and Sparks, which used to be heavily agricultural and is now heavily urbanized. And then from there, the water passes through Reno and Sparks and went down to Pyramid Lake. And there was also a diversion to the Newlands Project below Reno and Sparks. Well, there, when you have an agricultural water right and it gets converted to municipal and industrial use, the common practice is that they can only change the consumptive use, the amount of the water right that would be actually consumed by the crops depleted from the river because downstream water uses depend upon the return flows to meet their water rights. And therefore, if you were able to consume the entire amount of the water right, including the transportation loss, then the downstream water users would be injured. Their rights would be injured because they would be getting less water than they got under the agricultural regime. What makes this case different is that we're at the bottom of the stream. And so what's happening here is that, in our view, if you do not allow the transportation loss to be transferred, what you have is a 5,600-acre-foot windfall to the Newlands Project, windfall in terms of water that they would not be able to receive if the water was used for agriculture under the guise of the no-injury rule, which doesn't make any sense. But it's a very unique situation in this case because there's nobody downstream from the tribe, from where the tribe would have diverted its water for agriculture. I thought that the engineer said that other parties' interests would be harmed. Is that wrong? I'm sorry. Say that again. I thought that the engineer thought that this might injure the rights of others. Is that the rule? Well – We'll give you some time on rebuttal, Mark. Okay. Thank you. The engineer – first of all, the engineer made a provisional ruling and said, he didn't say this, but my interpretation was, out of an abundance of caution, I'm not going to allow the transportation for this initial temporary change, but I'm going to leave it open for the future to reconsider that. And what the state engineer said was that he wanted to ensure that there would be no injury. And he – I'm struggling. I want to try to be fair here. But he pointed to an analysis of computer runs that were done in an environmental assessment by the federal government for federal purposes that was introduced into evidence. And he indicated that, well, these computer runs show that there could be circumstances under which there would be less carryover storage. Let me point out here that last year, for example, the full amount of 20,000 acre-feet that was allowed by the state engineer was used for in-stream flows. There was that much less diversion to the Newlands Project, but nobody was shorted because that deficit or that hole in storage was made up in subsequent months, and they got back to where they would have been if it hadn't been done. But the point I want to make is that the state engineer didn't analyze it in terms that we're talking about here, which is that how can they possibly be injured if there's nobody downstream who depends on these return flows? And the reason the state – the reason the computer runs, which is in the record, the reason that the computer runs showed what they did, and it was discussed during testimony, was because when they were comparing the results under an agricultural regime versus an in-stream flow regime, for agriculture they assumed that the return flows and the tributaries that came into the river below Derby Dam would be used for agriculture, but they wouldn't be used for the in-stream flows. Now, that problem was rectified in the way – Kagan. That's helpful. Thank you. Okay. Well – Wait, wait, wait. You're in the red. Excuse me? I'm in the red. Yes. Yes. So we'll give you a couple of minutes – give both of you together two minutes on rebuttal, but I think we need to hear from the other side. Okay. I wanted to also talk about the jurisdiction issue, but – Well, we'll see what is said by the other side. Okay. Thank you. Thanks. May it please the Court, Nevada Deputy Attorney General Michael Walls appearing today on behalf of the Nevada State Engineer Hugh Ritchie, and I would like to reserve 10 minutes of time for counsel for the Truckee Carson Irrigation District. Picking up where we left off, it appears to me that the – what is at the center of this dispute is some language that falls there on page 91, and that change provision. They are allowed to change water to which they are entitled. The United States and the tribe's interpretation of the no-injury rule is inconsistent with the terms of the Ordage Decree and improperly limits the scope of the no-injury rule to downstream users only. Nothing in Nevada law limits the no-injury rule in this matter. The transportation right – Well, injury depends on what they're entitled to, and we're discussing what you're entitled to, so we're coming back to the question of what are they entitled to. That's exactly right. The transportation loss provision is a contingent right. It rises and it falls depending on the factual circumstances on the ground. As a matter of fact, at hearing, the federal water master testified that he has at times increased the diversions for the tribe's agricultural land because there was insufficient transportation water to get the duty to the actual physical land. If the facts likewise indicated that there was getting – that less transportation water was needed because of geology, distance, any other number of factors, that amount under the decree would also have to be then decreased. My problem with this, and it affects both sides in a way equally, is the decree really doesn't speak to the question we have here in front of us. It speaks to what you do when you're using it for agriculture, but it doesn't speak to how you measure it when you're using it for in-stream flow. I mean, it just doesn't say one way or the other. I think that's correct. If we look at analogies, however, for example, the Alpine decree, which has been looked to by this Court in interpreting the Oradich decree, specifically states that if there is a change in the manner of use, that only the consumptive portion of the right can be transferred. It specifically states that. So do you want us to read that in? I think it is certainly a part of the no-injury rule and the transportation loss as written in this decree. Since it moves according to need when there is no need, there is no right to transportation loss. And that is, in fact, what they're arguing here, is that there's this absolute right to a certain amount of transportation loss, regardless of the facts. It doesn't seem to make sense to me that on the one hand, if you use this water for agriculture, that the transportation loss can adjust, but if you then change the manner of use, that you now freeze the transportation loss. It becomes an absolute right because of the change, even where, as the facts here indicate, there's going to be zero transportation loss. There's no law to support the idea that it converts in that situation. I understand that this is not consistent with your argument, and I understand it's also not compelled reading of the decree, but it seems to me if the tribe were, year after year after year, going to use this water for agriculture, and year after year they would get the same end amount, that is to say water duty as you're now using the term, and the transportation loss number would go up and down depending on circumstances, okay, that's what they're fully entitled to do. Why is it not a plausible reading of the decree to say, okay, let's assume that they're using the water for agriculture and the transportation number is X or Y depending on the circumstances, and that's the transportation number that they get to transfer, not that there's an absolute number, but that whatever the year's conditions are and the transportation loss that would exist were they transferring it to agriculture, that's what they get. Why is that an unavailable reading of the decree? Well, I'd like to make two points there. First, the limit of a right under Nevada water law is beneficial use. That's the scope, the limit, and the extent of the right. Using more water than you're entitled to for the beneficial use is considered wasteful. That's true under the decree as well. And then that's when you start bumping into the no injury rule again. Granted, if they wanted to use that water for agriculture and they could do so, there would be a higher amount there, and TCID and other users may be impacted by that. However, they don't necessarily then have the right to change that to another use that will be more consumptive than it otherwise would have been and then injure upstream users. But now the question is what do you mean by consumptive? They will consume the same amount of water from your standpoint. That is to say the amount of water that they would have been using for agriculture is what the end use is, the duty and the transportation. They're going to consume exactly the same amount. Well, I'm afraid that comes back around to the water to which they're entitled. It is somewhat circular, unfortunately, but I'm afraid that that's the nature of the transportation right. It is a factually unusual circumstance. You only have so many terminal rivers in the nation, and Nevada gets most of them. But at the heart of that as well is does a water user at the end of a terminal river, be that the Truckee, the Carson, the Walker, the Humboldt, have a different water right than every other user on the system? There's nothing in the decree that would indicate that that would be the case. They have the same type of water right as everyone else. And by changing the nature of that right, changing what they are entitled to, it will impact upstream users. More water is going to go over the dam and down the river. It's going to be unavailable for other people to appropriate. The no-injury rule is not limited strictly to downstream users. If they lose this case, that is to say, if we were to hold that if they use the water for in-stream use, the transportation loss doesn't transfer, they don't get that, what's to prevent them from saying, well, okay, heck with you guys, I'm going to use it for agriculture. Come and get me. I'm not sure there is anything. At least from the position of the state engineer. If you want some of that water, maybe we can strike a deal and we'll take two-thirds of that transportation loss for in-stream use, and you guys get a third. I'm afraid that's a Gordian knot that I'm not going to be able to untie for you. That is a possibility. And certainly those things should be considered, but I don't believe that the state engineer is in the position to compel anyone to do so. The second point that you hit on, Your Honor, is the aspect of the factual record as it was before the state engineer. There was no evidence of what the historical transportation loss was or would have been. That's a failure of proof, and the state engineer was correct under those circumstances in saying, absent that proof, that that water right should not be transferred. There's a question even in front of us. I've got problems with proof in front of the state engineer. The state engineer didn't reach the question, and I've got an argument, at least as I see it, that the whole thing's moot because we've got lots of water in here now. The particular decree that originally gave rise to this is no longer in effect. I mean, why are we even here? I don't necessarily disagree with that, Your Honor. This water has already been delivered. It's gone. Those permits. So should we vacate the district court decree, the district court order? Unless you want on this point. Certain of these questions may likely come up again. There is another pending change application sitting before the state engineer as we speak that's in publication and will be heard by him. So certain of these issues are going to come up again. The district court didn't decide on the same ground that the state engineer did. That is correct. The state engineer decided that on an evidentiary issue that there was no evidence of what the historical use was. The district court went further and said the nature of this right is such that they cannot transfer it, and he relied on the language of the decree in doing so. If I might touch just quickly on the issue of a choice of law, the question of whether the tribes reserved water rights are to be administered pursuant to state law was previously addressed by this court as part of the interlocutory appeal. That need not be revisited. Federal law supports that decision. The McCarran Amendment, the Reclamation Act all point to the fact that state law controls here. There is no Federal – no body of Federal water law to deal with the transfer of water rights. Congress has repeatedly expressed its intention that state water law apply under those circumstances. What's that even mean here? As I look at it, I'm just supposed to try and figure out what the decree says. I'm not sure I understand your question, Your Honor. The Federal or state law. Are you telling me that I read the decree differently depending on whether I apply Federal or state law? I'm just trying to construe this – this or did you decree? No. I don't think you do. Well, there's no Federal law to interpret on the transfer issue, and therein lies the point. However, the Pyramid Lake Tribe argued as part of the interlocutory appeal has argued here the state law should not apply, that they are not subject to state administration. The manner provided by law is the language in the decree. This Court has consistently interpreted that to mean state water law, substantive and procedural. There is no Federal water law that applies to changes. I don't understand this issue either. How would – what Federal law is there that would help them? I do not know, Your Honor. I do not know. Thank you. May it please the Court. I'm Michael Van Zandt for the Truckee Carson Irrigation District. And I'd like to echo some of the argument that Mr. Walls made, but specifically pointing to some provisions in the decree, because I do believe that the decree is the controlling instrument here that the Court should look to in interpreting whether or not the transportation loss component is subject to a transfer or not. Clearly, that distinction that is made in the decree between the diversion rate, that is the 5.59 for Claim 2 versus the 4.1 as applied to the land for Claim 2, and in the Claim 1, the 4.71 versus the 4.0. The very fact that the Ordich Court made the distinction in issuing its decree between the transfer – what can be diverted from the river and what actually can be applied to the land is a very important distinction because it really does define what the water right is. And later on, a quote, language from the decree that talks about that 5.59 and the 4.71, those diversion rates are merely estimates, and you don't have a right absolutely to that amount of water if you don't need it. And I'll point the Court to that provision in just a second. But it's very important to read Claims 1 and 2 very carefully because the very important language that is really the definition of beneficial use for the water right is the amount of water so diverted during any such year shall not exceed 4.71 and further provide the water applied to the land shall not exceed four acre feet per acre. So the portion of the water right that we're talking about that is actually beneficially used as applied to the land is the portion that cannot be exceeded, that four acre feet per acre, or for Claim 2, it's the 4.1. Again, repeating that, nor exceed during any calendar year 4.1 acre feet per acre. And when you look at the transportation loss provision that is in Excerpt of Records, page 90, page 87 of the Ordich Decree, that language is very important, and it's in the third full paragraph on page 90 of the Excerpt of Records, Your Honors. And the last sentence, I believe, is the operative one. Whether more or less than the amount herein before estimated for diversion from the stream by any ditch, the quantity of water diverted for irrigation shall in every case be only such an amount as will supply to the land after actual transportation loss the amount of water allowed by this decree. I'm sorry. It's the third full paragraph. I want page 87. Third. It's the Excerpt of Records, page 90, but it's 80. I'm with you. I've got two columns. Which column are you on? Left column, the third full paragraph there. I'm beginning with the word whether more or less. Okay. I'm sorry. Whether more or less. That really defines what happens with the transportation loss under the decree. And basically what that is saying is, and admittedly it's geared toward irrigation, but the reason it's geared toward irrigation is there are only two kinds of rights that were adjudicated here, irrigation and non-consumptive power for Sierra Pacific. So that's why they zeroed in on irrigation for this. But the issue is if you don't need it for the use for which you are claiming, then there's no reason for you to divert water for that purpose. And it really does address the issue that the numbers that are in the decree, if you go up to the beginning of that paragraph, it talks about the amount herein before estimated and allowed to be diverted if it's not sufficient after transportation. That's what the Ordish decree is saying there, that they really are just estimating what this transportation loss component would be, and it can go up and down depending on the circumstances. Your Honor is right. If the tribe used all this water for irrigation, clearly, you know, they could take the transportation component that is in the decree if they need the entire amount. But let's say that they want to transfer the water right to another place of use for irrigation that is further up in their system. Then there would need more transportation water to do that. And there would be a question about whether or not that transfer might cause an injury to other water users in the system. And I want to address the injury in just a second here. To answer the Court's question, though, about why don't they do that, there's actually a physical limitation right now on the reservation in terms of the number of acres that can be irrigated. They've only got between 1,000 and 1,200 acres roughly in the reservation that have been developed for irrigation. Not that they couldn't develop more, but that's all they've done. The injury question, I think, is a very important one, Your Honors, because in the United States brief, when they talk about injury, there's another component that they talk about, and that's the beneficial use. So I've addressed, I think, the beneficial use part of it. But the injury part of it, I think, is very important. And, Judge Schroeder, I think you referred to this. In the State Engineer's ruling, he makes a specific finding on this point. And he says that State Engineer finds there is a right to storage in the Lahontan Reservoir under Claim 3 that cannot be injured by the changes requested. And this is an excerpt of a record, United States excerpt of the record, page 182. And he goes on to – The storage? It's the storage, yeah. He was concentrating on the storage as one that would be impacted. And there was testimony to the effect that between 5,000 and 8,000 acre-feet of water might be less available to be diverted for storage. And then he goes on to say the State Engineer finds if the change is included in the transportation loss, there may be reduction in storage that cannot be assured. And that's the standard that the State Engineer is using, cannot be assured will be made up during the remainder of the calendar year for the next irrigation season. Now, whether or not it is made up is not the issue. The question is whether the change has the potential of injuring that storage right. And though he – the State Engineer says the probability is that it may not, he says the State Engineer finds by not allowing the transportation loss and by requiring the applicants to choose to exercise the rights either under the Alternatives 3 or 4, that's the scheduling issue that's also been briefed, as described in the environmental assessment, existing rights will be protected. So it was the State Engineer's determination that in order for existing rights to be protected, the transportation loss component could not be transferred. Now, that's a finding of fact by the State Engineer. There's a presumption of correctness to that. It was affirmed by the district court. And so we believe that the clearly erroneous standard applies to that, and I don't believe that the United States nor the tribe have made any showing to this court that that finding of fact should be overturned under these circumstances. On the issue of schedule for in-stream flow that has been addressed, it is in the briefs, and we just want to point out that both the United States and the tribe filed applications that included the schedule that the State Engineer imposed on them as a permit condition, and that's at Excerpts of Record 95 and 106, United States Excerpts of Record. And that schedule is described in the environmental assessment. And in front of the district court, both the United States and the tribe waived objections to that, and that's in TCID's Supplemental Excerpts of Records 54 and 55. So I think that deals with those issues. Just quickly on the choice of law issue, I'm going to point the Court to the United States versus Adair, which is cited in our briefs as well as the others. And there's a footnote there, footnote 19 on page 1411 of that case, and it basically says in that footnote that the tribe's rights in that case could be affected by State law, and that this happened in the Orders Decree as well. And one of the things that the Court zeroed in on was the priority of right. Well, the priority of right is determined under State law, not under Federal law. There's no Federal law to apply here with regard to priority of right. And the other right that Adair mentions is the precise quantity of water protected must be determined in accordance with State techniques and procedures, and they also cite Colorado River for that. So I think it's very important when you're looking at these cases to understand that there is no Federal law substitute, and you must look to essentially State law to flesh out the decree. And the way that the State has applied the transportation loss issue, as Mr. Wall stated, in the Alpine decision in particular, they won't allow even transfer of anything but the consumptive use portion of the water right. Thank you very much. Any further questions? Thank you. I'd like to try to take one minute on transportation loss and let Mr. Pelsiker address the jurisdictional issue. I'd just like to say under the common law, the right that is granted to a water right holder is a diversion right including the transportation loss. We agree with Judge Fletcher that the exact number may be indeterminate in the decree, but the right includes the transportation loss right, and that is the right. You get to transfer only subject to the change provision, and that's how it works under common law. There isn't a problem with beneficial use here. And we've cited many cases in our brief for that, and we've also cited many cases in our brief for the principle that beneficial use includes the transportation loss right. Otherwise, you can only take the water that's required for beneficial use, and that requires the amount to get it to the use, and there are numerous cases for that. So there's no beneficial use problem. The injury issue, I think, is just absolutely clear. The State engineer stated a test for injury. It's whether if the tribe used the right for agriculture, is it any worse if they use it for in-stream flows? Does the same amount of water have to go down the river? And it does. There's no injury. We aren't asking for a rule just to downstream users. It's just that's the way it works because it's about the return flows. The same amount of water still has to get down to the tribe's right. It's only the question about what goes below. And maybe there was some confusion about some data provided or something, but this is just a clear, there's no factual question here. That if the Alpine decree says only consumptive portion can be transferred, they could have put that provision in this decree. That's exactly what we're saying. This decree doesn't have in it the kind of provisions that the district court said it did. Thank you very much. Justice Breyer. Just very briefly on the choice of law issue, there is choice of law. There is Federal law. This Court and the Supreme Court have said, for example, that once an Indian water right is decreed and quantified, it can be used, quote, for any lawful purpose. That's what we're trying to do here because the need. Well, you're talking about the reserve. The reserve water right. That's correct. There is Federal law to apply. The State engineer, in fact, did not apply that. The State engineer, this is very interesting. The State engineer says there's no Federal law to apply. The State engineer applied Federal law, but it was the wrong law because the State engineer said, well, we have this distinction between primary and secondary uses, and that's a creature of Federal law, and he will allow the transfer from agriculture, one primary use to another primary use, which was the fishery, because it's primary to primary, but he said, well, I'm not so sure whether we can do that from a primary to a secondary use. There's nothing in State law to that effect. That's a Federal rule. It's the wrong rule because this Court and the Supreme Court, as stated in our brief, have held, and I would ask this Court to uphold the rule that once you have a quantified and decreed Federal reserve water right, it can be used for any lawful purpose subject only to the no-injury rule. Okay. I think that is a good way to conclude. Thank you. The case, as argued, is submitted for decision. That concludes the Court's calendar. The Court stands adjourned.
judges: Schroeder, Hawkins, W. Fletcher